IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CAROLANN M. NEES,                            Case No. 6:13-cv-00079-MA

             Plaintiff,                    OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

             Defendant.

KATHRYN TASSINARI
DREW L. JOHNSON
1700 Valley River Drive
Eugene, OR 97401

    Attorneys for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

COURTNEY M. GARCIA
MATHEW W. PILE
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Carolann M. Nees seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, I reverse and remand the final decision of the Commissioner for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for SSI on February 3, 2009, with an amended onset of disability as of January 12, 2008. Tr. 185-91. The application was denied initially and on reconsideration. A hearing was held before an ALJ on February 10, 2011, at which plaintiff appeared with her attorney and testified, as did Vocational Expert Jeffrey Tittelfitz. Tr. 40. On March 17, 2011, the ALJ issued an unfavorable decision, finding plaintiff was not disabled under the Act. On November 15, 2012, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner for purposes of review.[1]

---

[1]Plaintiff previously filed an application for SSI disability benefits in 2007, which was denied on January 11, 2008, from which plaintiff did not appeal. Tr. 179-84, 121, 250. Plaintiff also was found disabled for a closed period from 1998 to 2000. Tr. 77, 204, 250. Plaintiff's prior applications are

## FACTUAL BACKGROUND

Plaintiff was born in 1961 and was 49 years old on the date of the hearing.  Plaintiff has a GED and six years of community college education, with no degree.  Plaintiff has past relevant work as a childcare monitor, a flagger, a laborer, a truck driver, and an industrial cleaner.  Plaintiff was involved in two motor vehicle accidents occurring in 1982 and 1997.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.  Each step is potentially dispositive.  The claimant bears the burden of proof at steps one through four.  See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy.  Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her application date.  At step two, the ALJ found that plaintiff had the following severe impairments:  obesity, degenerative disc disease of the cervical and lumbar spine, and tension headaches.  At step three, the ALJ

---

not at issue on appeal.

found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment. The ALJ assessed plaintiff with a residual functional capacity to perform light work, except that plaintiff can lift 20 pounds occasionally and lift 10 pounds frequently; she can stand/walk six hours and sit six hours but needs brief changes of position which will not exceed five minutes each hour; she can frequently balance, stoop, crouch and crawl; she can occasionally climb stairs, ramps, ladders and scaffolds; she can frequently reach in all directions and frequently handle and finger with both hands; she must avoid concentrated exposure to workplace hazards because of her use of medical marijuana.

At step four, the ALJ found plaintiff is unable to perform her past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that claimant can perform, such as bottle line attendant, office helper, or garment sorter. Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

### ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ improperly assessed plaintiff's credibility; (2) the ALJ failed to properly evaluate the opinion of

her treating physician, Martin Klos, M.D.; (3) the ALJ failed to develop the record concerning her psychological impairments; and (4) the ALJ failed to identify "other work" plaintiff could perform at step five.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews, 53 F.3d at 1039. "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; Valentine, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Batson v. Commissioner Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

**DISCUSSION**

I.    **Plaintiff's Credibility**

    A.    **Standards**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Carmickle v. Commissioner Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Tommasetti, 533 F.3d at 1039; Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities,

inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Tommasetti, 533 F.3d at 1039.

### B. Analysis

At the hearing, plaintiff testified that she lives in a van at Alton Baker Park on the homeless parking program.   Tr. 54. Plaintiff stated that she is unemployed and takes care of her 12 year old niece four times a week in exchange for $10 per week and showers.   Tr. 48, 56.   Plaintiff testified that she was last employed in 2001 as a flagger for six hours a day, and that she quit working because of headaches. Tr. 49.   Plaintiff stated that she is unable to work full time due to her headaches, pain and numbness in her arms and shoulders, and low back pain that makes standing and sitting difficult. Tr. 50.   Plaintiff denied that she has any mental impairments that prevent her from working.   Tr. 51.

Plaintiff stated that she has numbness in three fingers on each hand that cause her to drop dishes and have difficulty typing. Tr. 52-53.   Plaintiff testified that she is able to reach in all directions.   Plaintiff stated she shops, cooks, and carries her laundry to the service station to wash it. · Tr. 54.

Plaintiff testified that she gets headaches nearly every day and that two or three times a week, her headaches require her to lay down for approximately an hour and a half.   Tr. 56-57. Plaintiff also described that she gets swelling and pain in her

neck, and that she uses ice packs and stretching to treat them. Tr. 58. Plaintiff stated that she last used narcotic pain medication two years earlier. Tr. 59. Plaintiff uses marijuana one to two times a day as a muscle relaxer, for controlling pain in her neck and shoulder, and for relieving nausea. Tr. 59. Plaintiff stated that lying down relieves pressure on her low back and buttocks and that she does so for 20 minutes to two hours each day. Tr. 61.

Plaintiff described that on a typical day, she rises at 6 a.m., and makes coffee and oatmeal. Plaintiff stated that she watches television, then lies down or reads or goes for a walk around the park. Plaintiff described that she hangs around the van until it is time to go to her sister's house. Tr. 60. When at her sister's house, she eats dinner, showers, and then watches television, works on the computer, or plays video games with her niece. On those evenings when plaintiff is not at her sister's home, she described that she lies around or begs for money to fill her propane tank. Tr. 60.

In a February 3, 2008 Disability Report, plaintiff described that she is unable to work for eight hours a day because she needs to take breaks. Tr. 264. Plaintiff stated that she gets at least two headaches a day that require medicine or rest to relieve and that she can get as many as 60 headaches a month. Id.

The ALJ determined that plaintiff's impairments could cause some of the alleged symptoms, but the intensity, persistence and limiting effects of her symptoms were "not fully supported by the normal findings by her treating physician, and other physicians" and because her activities of daily living were inconsistent with her allegations of total disability.

Lack of objective support can be a clear and convincing reason to discount a claimant's testimony, so long as that is not the sole reason for the negative credibility assessment. Robbins v. Social Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2008); Thomas, 278 F.3d at 959.    It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).

Having carefully reviewed the record, I conclude that the ALJ's sweeping dismissal of plaintiff's complaints as inconsistent with the objective medical evidence fails to meet the requisite burden.  The Commissioner contends that in the ALJ's discussion of Dr. Klos's records, the ALJ highlighted some of the inconsistencies, such as plaintiff's statement that she needed continual breaks or suffered 60 migraines a month, and therefore

the ALJ appropriately discounted plaintiff's testimony. While I agree with the Commissioner that numerous inconsistencies may exist, this court is constrained to review the reasons asserted by the ALJ. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Although the ALJ provided a lengthy discussion of the medical evidence at step two, absent from the ALJ's analysis – at step two or otherwise – is any articulation of what specific symptom testimony of plaintiff's limitations is contradicted by what specific objective medical evidence. Thus, without a meaningful explanation as to how the objective medical evidence undermines plaintiff's testimony, I cannot affirm the ALJ's reasoning on this basis. Vasquez v. Astrue, 572 F.3d 586, 592 (9th Cir. 2009); Robbins, 466 F.3d at 884-85.

The ALJ also discounted plaintiff's credibility based on the fact that her alleged impairments have not interfered with her ability to perform most activities of daily living. Where a claimant is able to perform everyday activities indicating capacities that are transferrable to a work setting, an ALJ may discredit a claimant on that basis. Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012). And, an ALJ may discredit a claimant who may have some difficulty functioning to the extent that those activities contradict a claim of total disability. Id.; Turner v. Comm'r. Soc. Sec. Admin., 613 F.3d 1217, 1225 (9th Cir. 2010). In the decision, the ALJ detailed that plaintiff lives independently,

cares for her surroundings, and cooks. The ALJ noted that plaintiff is independent with self-care, drives, shops, goes for walks, and carries small laundry loads three blocks. The ALJ also noted that plaintiff stated she is "fine" when she takes her medication, and can move furniture when she feels good. The ALJ noted that plaintiff described collecting bottles and cans at the park where she lives, and is able to care for her niece four nights a week. The ALJ found these numerous activities inconsistent with plaintiff's allegations of total disability.

In this regard, the ALJ's findings are supported by substantial evidence in the record. The ALJ identified specific evidence in the record that undermines plaintiff's claims that her impairments were so great that she is completely unable to work. However, I conclude that this reason alone, on the record before me, does not rise to clear and convincing evidence sufficient to discount plaintiff's testimony. See Carmickle, 533 F.3d at 1162-63. Therefore, the ALJ has erred.

## II. **The ALJ's Evaluation of the Medical Evidence**

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d

1228, 1232 (9th Cir. 2011).  When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory.  Id.  In addition, a doctor's work restrictions based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than fully credible.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009); Batson, 359 F.3d at 1195.

Plaintiff argues that the ALJ erred by failing to credit the opinion of her treating physician, Dr. Klos.  Dr. Klos was plaintiff's pain management specialist and prescribed a regimen of Oxycodone and Methadone from at least 2004 to 2009.  On March 19, 2009, he provided a "Narrative for Disability Determination" in which he opined:

> [Plaintiff] is functionally capable of managing herself for her daily activities.  With her chronic neck pain, I have limited her to lifting no more than 10 pounds, and with her pain levels she is unable to perform work type activities, even at a sedentary job for more than two hours per day.  Travel is limited due to distraction when on the road from pain, but for short periods of time, she is capable of managing trips (i.e., to the grocery store or to her children's house).
>
> Her examination shows full range of motion with good strength in the arms.  Pain limits testing but her strength shows 5/5 bilateral through the pain.  Her reflexes are also normal in the arms.
>
> Pain is her limiting factor, not strength. ...

Tr. 617.

12 - OPINION AND ORDER

The Commissioner responds that Dr. Klos's opinion was contradicted by other medical evidence in record, and therefore, the ALJ was required to provide only specific and legitimate reasons to discount Dr. Klos's opinion. The Commissioner is correct.

On December 2, 2010, Seth Kagan, M.D., conducted a physical capacities examination, including a full physical examination, and found that plaintiff had full upper and lower extremity strength. Tr. 667. Dr. Kagan found that plaintiff had normal function and sensation in all fingers, with no evidence of grip release or myotonia, and excellent range of motion in all joints. Tr. 667-68. Dr. Kagan opined that plaintiff had no functional limitations, could sit, stand or walk for eight hours, and had no lifting or carrying restrictions. Tr. 658-59.

On April 23, 2009, nonexamining agency physician Sharon B. Eder, M.D., reviewed plaintiff's medical records and opined that plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and could stand, walk or sit for six hours in an eight hour day. Tr. 619. Dr. Eder opined that due to plaintiff's history of asthma, plaintiff should avoid exposure to fumes, odors, and dust, and should avoid workplace hazards such as machinery because she uses medical marijuana and pain medication. Tr. 622. Dr. Eder identified no manipulative limitations. Tr. 621.

The ALJ discounted Dr. Klos's opinion that plaintiff could not perform sedentary work for more than two hours a day because it was inconsistent with his own treatment records and normal findings that indicated that plaintiff was "stable" and "functional." Tr. 19-20. Where a treating physician's opinion is inconsistent with his own treatment notes, the ALJ may properly discount that opinion. Bayliss, 427 F.3d at 1216. While a physician's statement that a claimant is stable and functioning does not necessarily equate to being able to perform full-time work, I conclude that on the record before me, the ALJ appropriately discounted Dr. Klos's opinion. In the decision, the ALJ thoroughly discussed how Dr. Klos's opinion that plaintiff was unable to work for two hours at the sedentary level was inconsistent with his repeatedly benign physical findings. Tr. 17-20.

I conclude that the ALJ's reasoning is supported by substantial evidence in the substantial evidence in the record. As the ALJ noted, Dr. Klos's treatment notes consistently reflect that plaintiff was in school, was functioning well at home, and for a time was caring for her grandchildren. See, e.g., Tr. 420, 438, 447, 462, 561, 571, 577, 587. To be sure, Dr. Klos's treatment notes vary little from visit to visit over an extended period of time, while he consistently prescribed Oxycodone and Methadone. Additionally, as the ALJ indicated, over the multi-year course of Dr. Klos's treatment of plaintiff, her upper extremity strength

remained at full strength (5/5) and she maintained lower extremity strength.  Based on the years of negative objective findings, the ALJ could rationally reject Dr. Klos's opinion that plaintiff was unable to lift more than 10 pounds or perform even sedentary work for two hours based on this inconsistency with his "normal" findings.  On this record, the ALJ specifically and legitimately rejected Dr. Klos's opinion to the extent that it precluded plaintiff from performing sedentary work.  Tommasetti, 533 F.3d at 1041.

Although the ALJ provided specific and legitimate reasons supported by the record to discount Dr. Klos's opinion, I have identified other errors in the ALJ's evaluation of the medical evidence.  The ALJ failed to explain the weight given to the various pieces of medical testimony.  Although the ALJ gave some weight to the evaluation of Christopher Park, an occupational therapist who conducted a Functional Capacity Evaluation, it is unclear whether the ALJ gave Mr. Park's opinion more weight or less weight than Dr. Kagan's opinion that plaintiff had no functional limitations, or Dr. Eder's opinion that plaintiff was capable of performing light work.  Likewise, the ALJ failed to interpret the ambiguity between the dexterity limitations identified by Mr. Park and the absence of any manipulative limitations identified by Drs. Kagan and Eder.  Indeed, resolving ambiguities in the record is solely the province of the ALJ.  Thomas, 278 F.3d at 956-57.

15 - OPINION AND ORDER

Furthermore, the ALJ failed to describe what weight, if any, was accorded to the medical evidence from other plaintiff's other treating physicians. For example, Brian C. Jones, M.D., successfully weaned plaintiff from narcotic pain medications and treated plaintiff for migraines, and Robert Choi, M.D., noted that plaintiff suffers from severe degenerative changes, but without evidence of neural element compromise. Tr. 726, 736, 696. While the ALJ summarized the medical evidence at step two, the ALJ failed to identify how much weight was given to the conflicting medical testimony or how the ambiguities or conflicts were resolved when fashioning the RFC. As discussed below, this error will need to be addressed on remand.

III. **Duty to Develop the Record**

Plaintiff contends that the ALJ failed to adequately develop the record regarding her mental illness. Specifically, plaintiff now contends that her six-day hospital stay in June of 2009 for psychosis demonstrates that she suffers from a mental illness. Plaintiff contends that the ALJ ignored this ambiguous evidence and should have developed the record by ordering a consultative mental health examination to supplement the evidence. I disagree.

An ALJ's duty to develop the record is triggered only where the record is ambiguous or insufficient for the ALJ to make a disability determination. 20 C.F.R. § 416.912(e); Thomas, 278 F.3d at 958; Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

16 - OPINION AND ORDER

The evidence of plaintiff's decompensation appears troubling. However, any ambiguity in the record concerning plaintiff's mental health was clarified by her own hearing testimony.

At the beginning of the February 2011 hearing, plaintiff's counsel indicated that plaintiff has some "mental issues," in addition to physical impairments that prevent her from working full time. Accordingly, the ALJ asked the plaintiff for clarification:

> Q.   ... Your attorney in his opening remarks indicated that there might be some mental health issues here. Do you have depression or anxiety or anything like that or do you not consider that to be a hindrance to your ability to work?
>
> A.   That, I don't feel as thought that's –
>
> Q.   That's not a hindrance?
>
> A.   – a hindrance.

Tr. 51.

Thus, in response to the ALJ's questions, plaintiff *affirmatively denied* seeking disability based on any mental health impairment. Similarly, in her disability application plaintiff fails to list any mental health condition that prevents her from working. Tr. 207, 251, 264. An ALJ simply cannot be required to develop the record concerning an impairment where the claimant unmistakably denies seeking benefits on the basis of that same impairment. To do so would impose to great a burden on ALJ. Therefore, based on the record before me, I conclude that the

record was not ambiguous, and the ALJ's duty to develop the record was not triggered.

## IV.   **Step Five**

Because I have identified errors in the ALJ's evaluation of plaintiff's testimony and the medical evidence that may impact the RFC, the ALJ could not rely upon the VE's testimony. <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984). I therefore decline to address plaintiff's step five argument.

## V.    **Remand**

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits. <u>Vasquez</u>, 572 F.3d at 593; <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed. <u>Vasquez</u>, 572 F.3d at 593.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." <u>Harman</u>, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to

find the claimant disabled were such evidence credited.
Id.

Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. Connett, 340 F.3d at 876. The reviewing court should decline to credit testimony when "outstanding issues" remain. Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010). Moreover, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." Strauss v. Commissioner of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011).

I have concluded that the ALJ erred in evaluating plaintiff's testimony. Plaintiff testified that she suffers from back and neck pain that require her to lie down for 20 minutes a day, and daily headaches which require her to lie down at least two times a week for an hour an a half. Tr. 57, 62. The VE testified that if a person needed to lie down for 20 minutes up to three times a day, competitive employment would be eliminated. Tr. 71. However, this evidence needs to weighed against other evidence in the record. As noted above, the ALJ also erred in evaluating medical evidence which discounted the severity and frequency of her headaches, and found no functional limitations resulting from her alleged back and neck pain. Tr. 622-625, 658-72. It is the ALJ's responsibility in the first instance to determine credibility, resolve conflicts

in the medical testimony, and address any ambiguities in the record. Vasquez, 572 F.3d at 591 (quoting Andrews, 53 F.3d at 1039-40)). Thus, because outstanding issues remain before a disability determination can be made, I decline to credit plaintiff's testimony as true.

Accordingly, this action is remanded for further administrative proceedings including re-evaluation of plaintiff's testimony; re-evaluation of the medical evidence from Drs. Kagan, Eder, Jones, Choi, and Mr. Park and resolution of their conflicting opinions; a revised RFC if necessary; and a new determination at step five, including new VE testimony if necessary.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is REVERSED and this proceeding is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this _17_ day of MAY, 2014.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge